**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| STEVEN B. GLUSAC, RITA LOPEZ, | ) | |
| RONALD PAULSIN, SAMUEL ORLICH, | ) | |
| SR., LOY R. ROBERSON, and | ) | |
| WILLIAM C. WOYNAROSKI | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO.  2:03cv278 PS |
| | ) | |
| COUNTY OF LAKE, INDIANA, | ) | |
| LAKE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, and ROGELIO | ) | |
| DOMINGUEZ, Individually and in his | ) | |
| capacity as Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Following a bruising primary battle for the Democratic nomination for Lake County

Sheriff, six former employees of the Lake County Sheriff's Department who supported the losing

candidate were ousted from their jobs.  The decision to terminate the six employees was made by

newly elected Sheriff Rogelio Dominguez (the Lake Co. Sheriff and Sheriff Dominguez are

hereinafter, collectively, the "Sheriff").  The Plaintiffs now allege that the Sheriff and Lake

County, Indiana (the "County") fired them because of their political ties to Sheriff Dominguez's

primary opponent in violation of their First Amendment rights.

This matter is now before the Court on the Sheriff's Motion for Summary Judgment

(hereinafter the "Sheriff's Motion"), [Doc. 38], and the County's Motion for Summary Judgment

(hereinafter the "County's Motion"), [Doc. 47].  Because there are significant questions of

material fact remaining with respect to both motions, they are both DENIED.

1

## I. FACTS

The facts, read in the light most favorable to the Plaintiffs, demonstrate that the Plaintiffs are all former employees of the Sheriff.  In 2002, due to term limits, the sitting Sheriff, John Buncich, was unable to run for a third term so his Chief of Police, Miguel Arredondo, ran in the Democratic primary to be the party's nominee.  Arredondo was challenged in the Democratic primary by Rogelio Dominquez.  Buncich supported Arredondo.   Some of the Plaintiffs were hired by Buncich, while others were employed by the Sheriff's office  prior to the Buncich administration.  The various job titles of the Plaintiffs were described to the Court as follows:

| Plaintiff | Job Title |
|-----------|-----------|
| Glusac | Special Investigator |
| Lopez | Office Manager |
| Orlich | Director Work Release Unit |
| Paulsin | Commander of Court Security |
| Roberson | Government Affairs Coordinator |
| Woynarski | Supervisor Special Investigators |

Although the Court was provided with each Plaintiff's job title, we were not provided a detailed job description for any of them.

### A.      Glusac and Woynarski

Glusac and Woynarski were both part of the Sheriff's Special Investigators program. Buncich hired Glusac to serve as a special investigator in 2001.  His job duties included delivering documents and performing background checks on individuals who applied for positions in the Sheriff's Department including correctional officers, merit employees, and civilian employees.

Buncich hired Woynarski as the supervisor of the Special Investigators in 2001. Woynarski, likewise, stated that his duties included delivering documents and performing background checks on employment applicants.  Although Woynarski was paid $3000 more than Glusac, he denies having any supervisory duties or any additional duties other than those performed by Glusac.

**B.      Paulsin**

Paulsin was hired by Buncich to be the Commander of Court Security.  The Sheriff  has provided the Court with virtually no information regarding Paulsin's job duties other than the terse statement that he "over[saw] the personnel who provide court security to all courts in Lake County."   Paulsin testified that he did not have any final decision-making authority regarding staffing needs, hiring, firing or disciplinary procedures nor did he ever make any recommendations as to modification of Court Security policies.

**C.      Orlich**

In 2002, Buncich appointed Orlich to be the Director of the Work Release Program. Once again, the Sheriff failed to provide any specific job description, but rather merely stated that Orlich was responsible for enforcing the department policies and administering the Work Release Program which included enforcing all of the program rules and regulations.  Orlich noted however, the he did not have any role in the creation or alteration of any policies of the Work Release Program.

**D.      Lopez**

Lopez was a 23-year employee of the Sheriff's Department who performed administrative and secretarial duties in various positions within the Sheriff's Department.  In the

Buncich administration, she was one of three secretaries who worked under Geraldine Larson, the administrative assistant.  The parties dispute how much secretarial work Lopez actually performed.  According to the Sheriff, Lopez performed very little actual secretarial work, but rather held her position because of an intimate relationship with Buncich.  Indeed, according to the Defendants, Lopez's only real "secretarial" work was opening Buncich's personal and business mail.  As such, Geraldine Larson advised Sheriff Dominguez upon his taking office that she did not believe that Lopez could perform the secretarial duties required by her position.

In contrast, Lopez asserts that she did perform secretarial duties including typing documents, answering the phone, sorting and distributing the mail, and scheduling appointments, and had been doing so for 23 years in the Sheriff's department. (Lopez Dep at 33-34; 49).  Prior to her position in the Buncich administration, Lopez claims that she worked in the Sheriff's civil division, radio division, bookkeeping, and the jail records departments, all with the Sheriff's Department.  Additionally, while Lopez admits that she and Buncich were friends outside of the office, she denies any intimate relationship between the two.

**E.     Loy Roberson**

Roberson was originally hired into the Department in 1994 by then-Sheriff Stephen Stiglich as the public information officer.  When Buncich took office in 1995, he promoted Roberson to the position of "governmental affairs coordinator."   Once again, the parties dispute the actual duties of Roberson's position.  The Sheriff contends that Roberson handled all media relations for the department including providing information to the press on a daily basis and even in the evenings as necessary.  They also point out that Roberson held himself out as "the chief information officer/spokesman" for the Sheriff during the 2002 primary election – a fact

that Roberson does not deny.

In contrast, Roberson asserts that his job was limited to gathering police reports and releasing them to the press.  Roberson states that he did not have any discretion regarding what information was to be released, but rather simply reviewed police reports for accuracy after which he released them to the press.   He further stated that all releases required approval by Buncich before they were released.  Finally, he asserts that the only time he was contacted by the press after-hours was with requests for police reports for overnight incidents.

**F.      Changes in the Lake County Sheriff's Department**

During the 2002 Democratic primary to replace outgoing Sheriff Buncich, each of the Plaintiffs supported Miguel Arredondo**,** the chief of Lake County Sheriff's Police Department during the Buncich administration.  As mentioned, Sheriff Dominguez was Arredondo's opponent in that election.  While each Plaintiff's precise manner of support for Arredondo varied, in general, the Plaintiffs purchased fund-raising tickets for Arredondo and displayed lawn signs and bumper stickers.  Ultimately, Sheriff Dominguez defeated Arredondo in the primary, won the general election in November 2002, and assumed the duties of the office on January 1, 2003.

After winning the general election (and, in some instances, prior to taking office), Sheriff Dominguez terminated each of the Plaintiffs from their respective positions.  First, on December 29, 2002, three days before Sheriff Dominguez took office, he informed Roberson by letter that he was terminated.  The letter did not provide any reason for Roberson's termination.  Second, on January 3, within three days of assuming his new position, the Sheriff notified Lopez, Orlich and Paulsin individually by letter that they were terminated as of that date.  The Sheriff did not

provide them with a reason for their termination except to say that they were being terminated from their positions which he characterized as ones that involved "policymaking."  Finally, on January 21, 2003, the Sheriff notified Glusac and Woynaroski by letter that their positions were terminated, effective February 2, 2003.  The Sheriff informed both men that their positions were terminated as a result of a departmental reorganization.

Subsequent to the Plaintiffs' terminations, the Sheriff asserted that each termination was, at least in part, a result of department reorganization.  Sheriff Dominguez testified that upon taking office he reviewed the department's structure – looking to budget, the type of work actually being performed by each position, and whether each position was confidential or policy-making – before determining what changes to make in the Department.  His stated goal was to place more sworn police officers in positions previously held by civilian employees.  We note, however, that the Sheriff only placed a merit police officer in two  (Director of Work Release and Commander of Court Security) of the six positions previously held by the plaintiffs.  (Def. Memo. at  27-30). We also note that while it appears that the positions held be Glusac and Woynarski were eliminated, the net budgetary savings from this reorganization was $0.  (Plf. Ex. 21). This is because the Sheriff created new positions such that any savings ostensibly achieved by the release of Glusac and Woynarski was offest by the creation of the new jobs.

## II.  DISCUSSION

Both the Sheriff and the County brought motions for summary judgment.   While the facts of the motions overlap, the legal arguments do not.  Therefore, we take each motion in turn.

## A.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby*, 447 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

**B.      The Sheriff's Motion**

The Plaintiffs brought suit against the Sheriff under 42 U.S.C. § 1983 asserting that the Sheriff violated their First Amendment rights when he terminated their employment allegedly based upon their support of Arredondo, his primary opponent.[1] The Sheriff contends that he is entitled to summary judgment for three reasons. First, the Sheriff argues that the Plaintiffs cannot demonstrate that political affiliation was a substantial motivator in the Sheriff's decision to terminate their employment. Second, the Sheriff argues that he had a legitimate non-political reason for terminating the Plaintiffs. Finally, the Sheriff alternatively argues that he could constitutionally terminate each Plaintiff because they held confidential and/or policy-making

---

[1]Although the Plaintiffs initially couched their claims in terms of retaliation for political-based speech, based on both parties' use of the *Elrod-Branti* line of cases, the parties seem to agree that the Plaintiffs' claims are more akin to a political affiliation claim than to a speech-based retaliation claim.

positions.

### 1.      The Prima Facie Case

To survive summary judgment on a political firing claim, the Plaintiffs must demonstrate that their conduct was constitutionally protected and that the protected conduct was a substantial factor in the decision to terminate him.  *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981); *see also Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998).  Once the Plaintiff presents such evidence, the burden shifts to the defendant to show that they had a legitimate non-political reason for terminating the plaintiffs or that the firing was an appropriate political firing.  *Nelms*, 153 F.3d at 818; *see also Selch v. Letts*, 5 F.3d 1040, 1042 (7th Cir. 1993).

### 2.      Questions of Fact Remain Regarding Politics as a Motivating Factor

The Sheriff first argues that the Plaintiffs have not proven that their political activities were a *substantial motivating factor* in its decision to terminate their employment.  We note that the true question is whether they were "motivated, at least in part, by that conduct to fire [them]". *Nelms*, 153 F.3d at 819.  Thus, while their political activity must be a motivating reason, it need not be the only reason.

In this instance, we believe there are remaining questions of material fact precluding summary judgment on this issue.  In particular, both parties admit that the Plaintiffs' were active supporters of Dominguez's opponent, Arredondo, the Chief of Police under their old boss, John Buncich.  Indeed, each Plaintiff was either hired by Buncich or promoted by him and many had personal friendships with him.  Further, the timing of Plaintiffs' terminations is very suspect in that most plaintiffs were terminated within days of Dominguez's assuming his Sheriff's duties. *See Foster v. Arthur Anderson*, 168 F. 3d 1029, 1034 (7th Cir. 1999) (suspicious timing is

evidence of retaliation); *Cf. Terell v. City of Muncie*, 2001 WL 618960 at * 5 (S.D. Ind. May 10, 2001) (suspicious timing alone not enough to meet initial burden where plaintiff had supported unsuccessful candidate for a year prior to his termination and was under investigation for using city property for personal business).

We note that "it is rarely appropriate on summary judgment for a district court to make a finding on a state of mind." *Foster v. DeLuca*, 2005 WL 1273015 at * 3 (N.D. Ill., Feb. 9, 2005). In *Foster*, Judge Norgle considered the propriety of granting summary judgment where the plaintiff was fired from his position as the Director of Public Works virtually immediately after the new Mayor assumed his office.  The plaintiff alleged that his firing was politically motivated while the defendants alleged that he was terminated merely as the result of a reorganization.  In denying summary judgment, Judge Norgle concluded that "any decision as to the merits of either party's claim will necessarily force the court to make assumptions as to each party's veracity." *Id.*

We agree with Judge Norgle's assessment given the conflicting rationales presented by the parties in this case.  Accordingly, we find there are questions of material fact remaining which preclude summary judgment including, but not limited to:

1)      Were the Plaintiffs' activities protected speech?

2)      Did the Plaintiffs' support for Arredondo constitute a substantial factor in the Sheriff's decision to terminate their employment?

**3.      Questions of Fact Remain Regarding the Sheriff's Legitimate Non-Political Reason**

The Sheriff also argues that even if the Plaintiffs can overcome the first hurdle, their claims must, nevertheless, fail because he had a legitimate non-political reason for their

Page 9

employment terminations.  Namely, the Sheriff asserts that the Plaintiffs were removed from

their positions as part of a departmental reorganization.  The asserted goal of this reorganization

was to shift more departmental responsibilities to merit police officers.  Sheriff Dominguez

agreed that he looked to budget, job responsibilities, and policy-making considerations in

determining which positions to change/eliminate.   The evidence presented by Plaintiffs –

particularly, the fact that a merit police officer was placed in only two of the four positions as

well as the net budget gain of $0 from the reorganization – leaves us with questions of material

fact precluding summary judgment.  These questions include, but are not limited to:

1)      Who replaced each Plaintiff in their positions?

2)      If a Plaintiff's position was eliminated, what happened to the funds previously
        allocated to that position?

3)      What new positions, if any, were created by the Sheriff?

4)      If no new positions were created, where did the Sheriff allocate the duties of
        previous positions?

**4.      Question of Fact Regarding First Amendment Exception**

Finally, the Sheriff argues that he could properly terminate the Plaintiffs' employment for

political reasons because they held positions of a confidential or policy-making nature.

Adverse employment action taken on the basis of political affiliation is governed by a

long and complicated strain of cases beginning with *Elrod v. Burns*, 427 U.S. 347 (1976), which

instructs that a politically motivated termination may be constitutionally justified where the

public employer can demonstrate a compelling reason for that dismissal.  *Thompson v. Ill. Dept.

of Prof. Reg.*, 300 F.3d 750, 755 (7th Cir. 2002).  In *Elrod*, the Supreme Court originally guided

this analysis by looking to whether the person who was terminated held a "confidential" or

"policy-making" position. *Eldrod*, 427 U.S. at 372. Although those labels "accurately describe

the vast majority of offices that fall within the realm of legitimate patronage," we must look

deeper than a mere job title. *Thompson*, 300 F.3d at 756. Instead, the ultimate inquiry is

"whether the hiring authority can demonstrate that party affiliation is an appropriate requirement

for the effective performance of the public office involved." *Id*. (quoting *Branti v. Finkel*, 445

U.S. 507, 517-18 (1980)). Thus, we look to "the nature of the responsibilities and focus on the

duties inherent in an office, and not the functions of the position performed by a particular

person." *Thompson*, 300 F.3d at 756. This undertaking is frequently a fact-specific inquiry that

should ordinarily be left for a jury to decide. *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir.

1999)

Here, it is virtually impossible for the Court to analyze the duties of various positions as

we have been provided with little more than job titles and two-sentence descriptions of the

various Plaintiffs' jobs.[2] Accordingly, we cannot determine whether these positions are clearly

of the type where political affiliation is a legitimate job requirement and remaining questions of

material fact precluding summary judgment include, but are not limited to:

1) What responsibilities were inherent in the Special Investigator position?

2) What responsibilities were inherent in the Supervisor of Special Investigators

position?

3) What responsibilities were inherent in the Secretary position?

4) What responsibilities were inherent in the Commander of Court Security position?

---

[2]Based on the Court's thorough review of the depositions submitted as exhibits in this matter, it appears that detailed job descriptions do exist for the positions. However, the Sheriff chose not to include these job descriptions as exhibits to his summary judgment motion.

5) What responsibilities were inherent in the Director of Work Release Program position?

6) What responsibilities were inherent in the Government Affairs Coordinator position?

**C.      The County's Motion**

The County also requests summary judgment in this action.  In its 3-page motion, the

County asserts that during their depositions each Plaintiff was asked whether he was asserting

that a Lake County policy led to his termination.  Because each plaintiff answered this question

in the negative, the County argues that summary judgment is appropriate.  The County's

argument is overly simplistic in that it addresses only one of the three manners in which a

governmental entity may be liable under § 1983.

Governmental entity liability arises in the § 1983 context where there is "proof that the

entity adhered to an unconstitutional policy, statement, ordinance, regulation or decision

officially adopted or promulgated by the entity's officers." *Felton v. Board of Commrs.*, 5 F.3d

198, 201 (7th Cir. 1993) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)).  The

Seventh Circuit further described it this way:

> Unconstitutional policy or custom, such as would support municipal
> liability under § 1983, can take three forms: (1) express policy that,
> when enforced, causes constitutional deprivation; (2) widespread
> practice that although not authorized by written law or express
> municipal policy, is so permanent and well-settled as to constitute a
> "custom or usage" with force of law; or (3) an allegation that
> constitutional injury was caused by a person with final policymaking
> authority.

*Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003).

The Plaintiffs apparently agree that their claims are not based on any written policy.  Nor

do they contend that there is a wide-spread practice of political-based firing akin to custom or

usage in Lake County.  Instead, the Plaintiffs contend that "the Sheriff acted as the County's

Page 12

agent and policymaker in firing the plaintiffs." (Plf. Resp. to County's Mot. at 1).   In support,

the Plaintiffs allege that they were actually employed by the County and that the County funds

the Sheriff's Department.  They further allege that the County has traditionally paid the expenses

of and judgments against the Sheriff's Department.  At minimum, then, there are material

questions of fact as to whether the Sheriff was acting as a County policymaker when he

terminated the Plaintiffs' employment.

### III. CONCLUSION

Because there are outstanding questions of material fact regarding both the Sheriff's

Motion and the County's Motion, both motions [Docs. 38 and 47] are denied.

**SO ORDERED.**

ENTERED: July 26, 2005

S/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
